I'll call the first one, 25-20073, forgive me if I mispronounce, Kewayfati v. Bondi. Mr. Rivera, whenever you're ready. Good afternoon. Good afternoon. May it please the court, Javier Rivera on behalf of the appellants. The appellants are sisters, political figures in Venezuela who came to the United States to file for political asylum. Their applications were filed and remained pending with USCIS for over eight years. Finally, despite the merits of their claims, the Houston Asylum Office declined to grant their applications due to a second voice. The appellants were at the time and are now currently in temporary protected status. Therefore, they are ineligible to be placed in removal proceedings for the no vote review. This brings us to the question before the court. These consolidated cases present a narrow but very vital question. Whether the denial of an application for asylum by USCIS, explicitly labeled final, with no appeal and no referral to an immigration judge, is final agency action reviewable under the Administrative Procedures Act when the applicants are in lawful status when the decision is made? We submit that it is. The district court erred in dismissing these actions. Number one, finding that USCIS denial marked the consummation of Avis' decision-making process because it produced immediate legal consequences. Number two, there is no other adequate administrative remedy that exists. Requiring a TPS holder to forfeit their lawful status merely to obtain a review runs contrary to both the INA structure and the APA's text. Therefore, subject matter does exist as final agency has in fact happened. Just as a procedure, if you do step outside your TPS status to apply for asylum, hoping, I suppose, that you would get a quick hearing, and let's say asylum is denied, can you then reclaim TPS status? It would be exceptionally complicated to go backwards and reclaim TPS status. TPS allows you to remain in lawful status while it's active and while the country is designated. But if you lapse TPS status, meaning you surrender it or you don't renew it, it becomes exceedingly difficult to go back into it because you have to essentially ask USCIS to forgive your lapse and regrange your status. You use the term renew it. Do you have to periodically renew TPS status? Yes, TPS is published in the Federal Register. It's a country-by-country specific designation by the executive office. They give it a designation period and a registration period. An individual must continue to re-register once their country is designated again. How often do you have to re-register for Venezuela? Well, generally it's about a year, year and a half. There's some ongoing litigation right now in several courts regarding the withdrawal of TPS and de-designation of Venezuela. After Biden left office, he designated TPS again for Venezuela, then it was withdrawn by the Trump administration. Now it's in this continued legal litigation pathway in the Ninth Circuit regarding the ability to actually end TPS for Venezuela. So it's a complicated matter at the moment. Where is it in the Ninth Circuit? Right now TPS, and this is the difficult part, depending on when you filed, TPS could be extended or it could have ended. No, I'm sorry. In which court is it pending in the Ninth Circuit? It's in the Ninth Circuit right now. There's been several other lawsuits as well. And then it's most likely going to be re-decided by the Supreme Court. So if TPS prevents removal, explain how can the asylum denial possibly mark the consummation of the agency process when the statute expressly contemplates defensive asylum later? Right, that is correct. Defensive asylum is not a guarantee for everybody. The assumption I think sometimes people believe is all non-immigrants who are in status ultimately end up in removal proceedings, but that is not the case. The vast majority of individuals who are in the United States lawfully never go see an immigration judge or never place in removal proceedings. To be placed in removal proceedings, you essentially have to violate your immigration status either by letting it lapse or a volitional act which causes you to be placed in removal proceedings based on something you've done, like the commission of a crime or the ending of employment for your additional employer. So the vast majority of individuals will never end in removal proceedings. So removal proceedings in that context does not exactly function as an appellate review of an affirmative application. For the most part, people don't get this. Your clients are still legally present, still authorized to work, correct? Yes, sir. So tell me what concrete real-world legal right has changed because of this denial? That's a good point, Joan, and distinction to make. The temporary protected status is lawful status. However, it never leads anything further than just that. A grant of asylum will lead you to permanent residence. A grant of asylum is permanent and indefinite in which you are able to apply for adjusted status to permanent residence after having one year of asylum status. Temporary protected status leads nowhere but literally temporary status. So is it right to say that your argument is that the denial cuts off a pathway to a permanent status? That is correct. It cuts off a pathway. The decision is final for these individuals, and the injury is concrete because it ends the immigration process for them. Essentially what happens is the system way that the courts have looked at it is it rewards individuals who have violated their immigration status with de novo review and punishes individuals who are in lawful status with no avenue, no recourse, no remedy. If they're saying that there's no remedy to apply for a review under the APA, under district court, these individuals have no remedy. They are left without recourse where an individual who violates their status would actually have de novo review. Could your clients relinquish TPS and seek asylum defensively right now if they want review? Absolutely, but that would be a very arduous thing to ask an individual is to violate immigration law in order for you to get de novo review. Nowhere else does that exist. Why are you saying that's violating immigration law? Are you saying that that's what it is once you give up your TPS? They would be in the United States without authorization. That's correct. But why is that a problem for us rather than for Congress to fix? Because the APA has allowed a pathway for these kind of claims to proceed. If there's no adequate remedy, the APA allows for district court review. In this particular context, there is no administrative remedy for these individuals but to seek relief under the APA, under 704, in district court. Are you asking us to split from the Seventh Circuit? I don't think it's a circuit split because the decision that the government heavily cites is DACA. Right. And DACA was decided in 2018. In 2018, this is a precursor to the Supreme Court's decisions and the Fifth Circuit's decisions in Solazano and Sanchez. The idea of what TPS was wasn't fully fleshed out at that time. Many courts and immigration courts and federal courts believe TPS to be more akin to a deferred action, a temporary placeholder. But after these two cases came out, it is clear that temporary protect is that it is actual lawful status. They decoupled the admission and status portion, but they did find that TPS is actual unlawful status. So the idea kind of collapses in DACA because their understanding was TPS holders were subject to removal proceedings because it wasn't an actual status as a placeholder. But that is incorrect at the moment following the decision in 21. Thank you. The core arguments of the appellants regarding the denial is that USCIS has made a final agency action. Specifically, we refer to Bennett v. Speer. The Supreme Court developed a test to determine whether an agency's action is final. The court looked at the action must mark the consummation of the agency process, and it must determine rights or obligations or have illegal consequences. Both problems are met here. USCIS has issued a written decision stating there is no appeal from this decision and declined to refer it to an immigration judge. This concludes the agency process. The Bennett reasoning is carried forward in Sackett v. APA in 2023. The government has argued that the asylum handbook and the text of the appellant's denial are non-final. However, they are at the minimum have a binding practical effect. As in the Speer court, they found that an agency arguing that this is non-binding does not escape judicial review under the APA if the two-part test is made. Similarly, the Fifth Circuit applies to Bennett and American Airlines in Texas v. EEOC and, most recently, Aldoca v. Garland. In Texas v. EEOC, the Fifth Circuit rejected the notion that an agency could evade review by simply labeling a decision as interim. So it's not what they categorize, it is the effect that it has. In the instant matter, the practical legal effect is that the appellant's denial forecloses their eligibility for asylum. It bars derivative relief for their family members and it fixes their status in this legal limbo of temporary protected status. The decision is definitive and it is stated as final. There is no available alternative. This circuit has also emphasized that effective enforcement of a statute is a very important factor in determining the American Airlines return. Here, the government's position undermines effective enforcement because, like I mentioned, it penalizes those who maintain lawful status. It creates this perverse incendiary that only by violating the law, letting your status slip, can you seek judicial review. Congress did not design a system that rewards non-compliance with that. Maybe this isn't a great question, but I'll ask it anyway. Let's say at some point the TPS for Venezuela ends, however that happens. What happens to your clients at that point? The government can elect to place them into removal proceedings if they have not changed status to another category. However, the future possible alternatives of what could happen, it does not prevent finality when the decision was decided. I think the APA's gaze looks at what happens at the moment the decision was decided, not possible future outcomes or discretionary avenues for them. They look at finality from the moment it happened. The decision happened when USCIS declined their application. Finality, for all purposes, was at that moment. The government has also, as you mentioned, insisted that the denials are non-final because the appellants might one day renew them defensively. However, in El Date, Judge Higginbotham wrote a long concurrence, which he warned about this kind of rationality. He stated that removal proceedings do not function as an administrative appeal as only a small amount of non-immigrants are ever removed or violate their status. So El Date, is that the decision you're talking about from my court? Yes. Is that a problem for your argument here? Are we going to have to sort of be at war with that decision? No, El Date dealt with a different application. El Date dealt with an application for adjustment of status. And there is a jurisdictional stripping statute that forbids a federal district court to review decisions regarding adjustment status. So while El Date is instructive as far as jurisdiction and finality, it is a completely different animal as it deals with an adjustment status that is judicially stripped from review. But what we are presenting is an application for asylum, which is not judicially stripped under 1252. There's nothing that prevents review. To your knowledge, has any federal court found jurisdiction to review the denial of an affirmative asylum application prior to an alien pursuing defensive asylum? Federal circuit court or district court? I believe there's a district court decision on Louisiana in 2001. However, these are a little bit dated cases. And as I mentioned, our understanding of TPS has changed since the 2021 decision of Solazano and Sanchez. So any of those precursor decisions need to be reevaluated under the instruction of the civil court. Another thing that Jacob Mothman had mentioned is that the finality of one agency's decision by USCIS, it must be considered final because then they are asking another department, which is Department of Justice, to review the application. Therefore, it must be considered final because you cannot say that an agency's made their decision and then asking another department, another agency, to review that decision. Okay, Mr. Rivera, we'll see you back on rebuttal. You've reserved five minutes. Yes. We'll see you back then. We'll now hear from counsel for the Department of Homeland Security and all the other defendants. Good afternoon, your honors. May it please the court. Daniel Shukin, by the word, on behalf of the United States. The government respectfully requests that this court affirm the dismissals of the two district courts of appellant's complaints seeking review of USCIS's non-final denials of their asylum applications. My apologies. Appellants bring their claims sounding in the Administrative Procedure Act, which only allows challenges to final agency action. Without the finality requirement being met, district courts, federal judiciary, does not have jurisdiction to review the merits of the case. What is the process for establishing TPS? I don't mean the individuals, but who makes the decision to grant TPS? President, Congress? That would be up to the Secretary of State to determine, to designate countries for which individuals can seek TPS. So it's the Secretary of State who, of course, is in the executive branch. Do you see any separation of powers problems here with this particular case where it's discretionary with the executive branch, Secretary of State, to set up TPS? And then we're being asked to make it mandatory that if you're not granted asylum when you're in TPS, the courts have to review it. I mean, what's the basis for that? That's a good question. Frankly, I did not consider there being a separation of powers issue. I think, of course, it is up to the government to determine which countries are eligible for TPS. But the core question here is whether USCIS's action is final. And the government submits that it is not. As my friend on the other side noted, of course, these applications may be renewed in removal proceedings at some future date. It may not be a pleasant idea that an individual would have to withdraw their TPS in order to be placed in removal proceedings. But the appellants in this case do have the choice to do so. Go ahead. I was just ready. I'll ask the question when you finish. They have the opportunity to do so by submitting a written request to withdraw their TPS and to be issued notices to appear. At which point, once the Department of Homeland Security issues notices to appear, they would also transfer the actual asylum applications that USCIS reviewed to the Immigration Court, along with all supporting documentation, for a de novo, effectively administrative appellate review. TPS, in a sense, is recognition of dire living conditions in a particular country. And as a matter of executive grace, persons are allowed to have TPS status in this country. And that's my question. TPS can be granted. It can be taken away. And my concern is, because it is such a matter of executive branch grace that's determined by the Secretary of State, this idea that therefore you acquire other rights once we're protecting you in this country. It's like jumping from A to B. I see. I apologize. I'm not sure I understand. Well, keep going. So it's the government's position that the individuals in this case may withdraw their temporary protected status, request to be placed into removal proceedings, at which point they would have the opportunity, the executive branch would have the opportunity to have the final say, final determination on these individuals' eligibility for asylum. Well, I have to admit there's some traction in my mind in the argument that there are real consequences from this denial of asylum. The first thing that was mentioned was that it cuts off a pathway to permanent status, whereas now they're in sort of a limbo. What is your response to that? Isn't that a concrete legal consequence of the decision? It certainly has some effect. However— And what is that? That's what I'm getting at. What is the effect? They would not be eligible to pursue lawful permanent residency in the future. TPS is not a basis to do that. Okay. So why isn't that—you know, a legal right has been determined for finality purposes. Why isn't that—why haven't they satisfied the prong by pointing to that? Well, the DeKalb Court did reason that because they are protected from removal, and I would also note have employment authorization and can request a visa for all to travel if they would like, that effectively there is no legal right. But I take Your Honor's point that not being able to pursue permanent residency is a consequence. I think the crucial part here is that also the first prong is not met in this case. The USCIS denials of asylum do not mark the consummation of the executive branch's decision-making process. How's that? We were told by Mr. Rivera that this decision comes with no appeal allowed from this decision. So how is it not the consummation of that process? The individuals would, again, have the opportunity to seek deno or review of their eligibility for asylum in removal proceedings. Okay. So—and tell me how those are going to come about. So the individuals could withdraw their TPS status, request to be placed into proceedings, at which point USCIS would transmit their asylum application, all support documentation to the Executive Office for Immigration Review. It's a risky position, don't you think, to put someone in? I mean, they're temporarily protected right now. So you say, well, if you want a final word on this, you have to sort of give that up. It is a risky position. But isn't that just making them like any other illegal alien in the country? I mean, they're just getting into the same class as others who come here that don't have the grace of TPS. That is correct. If they want to pursue a final determination in removal proceedings of their eligibility for asylum, that is what they would have to do. That would be a choice that they could make, and it would be a risk. So TPS makes removal discretionary, but indefinite deferral can stretch heaven knows how long, for years. So is there a point ever where delay itself becomes a final agency act? No, Your Honor. I suppose, Your Honor, are you thinking maybe a mandamus action could be sought or compel determination? Well, I just wondered if deferral can just carry on for heaven knows how long. You're kind of stuck in this forever limbo. Is there a point where that prolonged, protracted delay itself practically becomes a final agency action? No, Your Honor, it would not. There always remains the opportunity to seek review in removal proceedings, and I would like to know. So if TPS renews indefinitely, it's your view that the sisters never get judicial review? No, Your Honor, that's not the government's position. The sister could withdraw. Unless they withdraw. That's correct, Your Honor. Which your friend on the other side says would offend, breach, violate the law, if I heard him right. So the Immigration and Nationality Act actually contemplates these varied proceedings, removal proceedings that we're discussing. It would align with the structure of the Immigration and Nationality Act for the individuals to avail themselves of removal proceedings in order to have de novo review of their asylum applications. What's your view? When I asked whether we were being invited to create a split with the Seventh Circuit, I was told that the legal landscape with respect to TPS has changed since the Seventh Circuit decision by the Solizano and Sanchez cases. Do you agree with that? No, Your Honor, I do not agree with that. Solizano and Sanchez both are in opposite to the Institute case because they dealt with adjustment of status. And my apologies. Whether individuals who are in TPS are lawfully admitted for the purposes of seeking adjustment of status, status and admission are two distinct concepts that are not necessarily at play in this case. They're not relevant to the question of whether USCIS denials constitute final agency action. So in your view, if we ruled for the applicants here, the petitioners, then we would create a split with the Seventh Circuit. Or not. Yes, I believe that would create a split. And I'm also unaware of any other circuits that address this precise issue. So I believe that would create a split. Okay, Your Honor. I would also like to apologize. I can't recall who said it. One of Your Honors asked whether appellants were effectively asking the court to rewrite a statute or to do the job in Congress. I would like to note that 8 U.S.C. 1252, particularly A5 and B9, are very clear that the process for judicial review of an asylum application is through the petition for review process, following review by the Executive Office for Immigration Review, then brought to the appropriate court of appeals. Do you have any thoughts on the form of dismissal, 12B1 versus 12B6? I do have thoughts on that. I found that quite interesting. I believe this court should affirm the dismissals under, or should find that the final agency action is jurisdictional and not a merits question. That would be in keeping with ALDACLI. The reasoning in that is sound, and I believe the court should follow that precedent and affirm both courts. The one that found on 12B6, the government would ask that the court affirm on the alternative ground, that it is not jurisdiction. Anything else? No, Your Honors. Thank you. Okay. Thank you very much. Mr. Rivera, we'll hear you on rebuttal. Yes, sir. Essentially what the government is proposing is that the appellates invite detention, arrest, and apprehension by withdrawing their applications for temporary protected status. Is there any statistics, I don't recall from your brief, but any statistics backing up what you're saying about detention, risk detention, et cetera, et cetera, as opposed to being paroled or whatever might be the case? I think detention and continued detention is a product of the Executive Office policy. In the current environment, everybody is being detained and taken into custody. Everybody? Essentially everybody who is out of status. How many persons are detained right now? I couldn't give you the exact number, but I know for a fact the numbers have just escalated by large amounts throughout the United States. It is a policy matter right now for the Executive Office, and essentially if they gave up their temporary protected status, they're inviting being arrested at their home and taken into custody into an immigration detention facility. That's the real world consequence that they have to- Like other aliens? Correct. Like an individual who went to the United States- So once again, you're seeking preferred treatment for those who come here or get a TPS while they're in this country? I think that there should not be a penalty for an individual who maintains their lawful status from attempting to seek de novo review or appellate review. There shouldn't be a penalty on these individuals because right now individuals with no status are essentially rewarded. Well, you're asking that they just get to step to the front of the line on the judicial proceedings. I don't think I'm asking that they step to the front of the line. I'm asking that they have an adequate remedy. Do you think there's a remedy for every wrong? The Administrative Procedures Act, the theme regarding the APA and 704 is to create this judicial review where there are gaps, an agency review so that they may actually provide an adequate remedy. So what is the concrete injury your clients suffer beyond delay? Delay is- I think the assumption is delay that they may one day fall out of status. They may what? Their injury- One day what? May fall out of status. They may one day lose their status. The injury occurred the moment the decision was made. I don't say this lightly, but you would hope they would fall out of status if TPS is removed because of a change of conditions in the country for which they have TPS? I would hope they never have to experience removal proceedings because you have the risk of continued detention and you have restrictions on your liberty at that point. It does not properly serve as appellate review for these particular applicants. So I do not wish that they would go through removal proceedings. We believe in our position- No, you didn't follow my question. You would wish that TPS was not necessary for a particular country, in this instance Venezuela. You would hope that they could go back to home and not have the conditions there that generate TPS status in this country. That's a difficult answer because they've also applied for asylum. They applied for asylum due to fear of persecution from their home country. For political reasons. Correct. Right. You would hope that those political reasons would no longer exist one of these days. I would hope that. Yes, Your Honor. That is correct. A couple things I wanted to mention as well. The government brought up 1252 and the lineal pathway in which a federal court reviews asylum applications, but that is a pathway if you're in removal proceedings. The pathway for reviewing an asylum application generally is the immigration judge, the board of immigration appeals, and then on a petition for review to the circuit court. But if they're not in removal proceedings and they're not subject to removal proceedings, this idea of 1252 doesn't gel. They are not subject to removal. So the government's argument on that aspect does not pan out. And once again, I wanted to bring it up again. The proposition is that USCIS falls in the Department of Homeland Security. They are a single agency. They have made a decision on this matter. What the government has asked them now is there's no final agency action because we need a second agency or a second department to now make a decision on the matter, which is the immigration court system that falls in the Department of Justice. That would not be the themes under us here. Agency action ended when USCIS made it. Okay. Mr. Rivera, thank you very much.